CRITIKON, INC., Plaintiff,

v.

BECTON DICKINSON VASCULAR ACCESS, INC., Defendant.

Civ. A. No. 93–108–JJF.

United States District Court, D. Delaware.

May 27, 1993.

Arthur G. Connolly, Jr., of Connolly Bove Lodge & Hutz, Wilmington, DE, Harry J. Roper, George S. Bosy, and Ellen D. Law, of Roper & Quigg, Chicago, IL, Donna M. Malin, of Johnson & Johnson, New Brunswick, NJ, for plaintiff.

Robert K. Payson, and William J. Marsden, Jr., of Potter Anderson & Corroon, Wilmington, DE, Albert E. Fey, Lars I. Kulleseid, and Richard M. Barnes, of Fish & Neave, New York City, Edward F. Mullowney, of Fish & Neave, Palo Alto, CA, for defendant.

## OPINION

FARNAN, District Judge.

### I. INTRODUCTION

Plaintiff, Critikon, Inc. ("Critikon") commenced this patent infringement action in the

United States District Court for the District of Delaware on March 1, 1993 for alleged infringement of U.S. Patent No. 4,952,207 ("Lemieux patent") entitled "I.V. Catheter with Self–Locating Needle Guard." (Docket Item ("D.I.") 1). On April 1, 1993, Critikon amended its Complaint alleging infringement of a second patent, U.S. Patent No. 4,978,344 ("Dombrowski patent") entitled "Needle and Catheter Assembly." (D.I. 21). Defendant, Becton Dickinson Vascular Access, Inc.'s ("BDVA") Answer to the Amended Complaint denies that BDVA infringed the Lemieux and Dombrowski patents and avers that both patents are invalid and unenforceable. (D.I. 45). Presently before the Court is BDVA's Motion to Transfer this case from the District of Delaware to the District of Utah pursuant to 28 U.S.C. § 1404(a). (D.I. 22).

## II. *BACKGROUND*

Critikon is a Florida corporation, with its principal place of business in Tampa, Florida. According to Critikon, there are three Critikon facilities relevant to the safety catheters at issue in this action. The first facility is the plant that manufactures Critikon's Protectiv™ safety catheter. It is located in Southington, Connecticut. The second Critikon facility relevant to this litigation is Critikon's corporate parent, Johnson & Johnson, which is located in New Brunswick, New Jersey. The third Critikon facility relevant to this litigation is located in Tampa, Florida. In addition, Critikon's potential expert witness, Mr. Vincent Vaillancourt resides in Livingston, New Jersey.

BDVA is a Delaware corporation headquartered in Sandy, Utah. The accused catheter products were developed and manufactured by BDVA in Sandy, Utah. The BDVA employees most intimately connected with the development, engineering, manufacture, and marketing of the accused products are located in Utah. In addition, BDVA's documents are located in Sandy, Utah.

## III. *DISCUSSION*

BDVA seeks to transfer this action to the District of Utah pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it may have been brought." [1] Although the Court must weigh the factors present in § 1404(a), a "plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request," and " 'should not be lightly disturbed.' " *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir.1970) (quoting *Ungrund v. Cunningham Brothers, Inc.*, 300 F.Supp. 270, 272 (S.D.Ill.1969)), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971). Thus, unless the " 'balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail.' " *Id.* (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F.Supp. 1296, 1307 (D.Minn.1969)). Moreover, transfer will be denied if the factors are evenly balanced or weigh only slightly in favor of transfer. *Allied–Signal, Inc. v. Honeywell, Inc.*, C.A. No. 90–395–JJF, 1991 WL 495770 (D.Del. Feb. 6, 1991).

BDVA makes a preliminary argument that Critikon's choice of the District of Delaware forum should not be accorded the deference required under *Schutte* because Delaware is not Critikon's "home turf," or where the acts giving rise to the lawsuit occurred and because Critikon's choice "does not reflect rational and legitimate concerns." Defendant's Brief in Support of Its Motion to Transfer This Action to the District of Utah ("Defendant's Opening Brief"), at 8–9. BDVA contends that "the only conceivable relationship that Delaware has with this action is that BDVA happens to be incorporated there. Critikon's choice of the Delaware forum reflects only Critikon's desire to avoid the most appropriate forum for this case—the District of Utah." Defendant's Opening Brief, at 9.

---

**1.** As a preliminary matter, there is little doubt that the action could have been brought in Utah. In fact, Plaintiffs do not dispute that this action could have been brought in the District of Utah. The alleged infringing catheters are manufactured in Utah, and the Court finds that Utah would have been a proper forum with respect to both personal jurisdiction and venue.

■ The Court disagrees with BDVA's characterization of Critikon's choice of the Delaware forum. At the outset, the fact that BDVA incorporated in Delaware should not be disregarded lightly. By incorporating in Delaware, it can be assumed that BDVA desired the benefits it believed Delaware provides to chartered corporations. BDVA chose Delaware as its legal home and should not now complain that another corporation has decided to sue BDVA in Delaware.

■ Moreover, contrary to BDVA's arguments, the Court finds that Critikon has demonstrated a "rational and legitimate" reason for choosing Delaware as opposed to South Carolina, which BDVA asserts is Critikon's "home turf." Delaware is centrally located among the three Critikon facilities relevant to this litigation, and Critikon's expert witness and documents are located in New Jersey.

With regard to BDVA's "home turf" contention, this Court has recently visited the question of the effect of a plaintiff's choice of a non-"home-turf" forum on the determination of the appropriateness of a transfer under 1404(a). In *In re ML–Lee Acquisition,* the Court stated:

> While transfer of a case will generally be regarded as less inconvenient to a plaintiff if the plaintiff has not chosen its "home turf" or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer. *See Molins PLC v. Cincinnati Milacron, Inc.,* C.A. No. 87–163–JJF (D.Del. March 22, 1988).

*In re ML–Lee Acquisition,* 816 F.Supp. 973 (D.Del.1993). The Court is persuaded that it would be inappropriate for a court to transfer an action based on a plaintiff's choice of a non-"home turf" forum, as defined in *Kirschner Bros. Oil, Inc. v. Pannill,* 697 F.Supp. 804, 806 (D.Del.1988), where, as here, the plaintiff has substantial facilities throughout the United States. Thus, notwithstanding BDVA's argument that the Court should disregard the deference *Shutte* requires the Court to give to Critikon's choice of forum, the Court will transfer the action to the District of Utah only if BDVA demonstrates that the balance of convenience of the parties and witnesses, and the interests of justice weigh *strongly* in favor of BDVA.

## A. The Convenience of the Parties and Witnesses

■ BDVA has not demonstrated that the balance of convenience to the parties weighs strongly in favor of transfer to Utah. BDVA argues that it would be substantially more convenient for the parties to litigate this patent dispute in Utah because all of BDVA's trial witnesses, the vast majority of documents to be produced in response to Critikon's document requests, and BDVA's manufacturing and development facility are located in Utah.

BDVA further argues that because Critikon will have to travel regardless of where trial is held, litigating in Utah will present little if any additional inconvenience to any of Critikon's fact witnesses. BDVA relies on *Filmtec Corp. v. Allied–Signal Inc.,* 13 U.S.P.Q.2d 1979, 1983 (D.Del.1989), where the court stated that "a section 1404(a) motion should be granted when a transfer would greatly aid the movant, yet barely disadvantage the opponent." (citations omitted).

Critikon, on the other hand, contends that it would be significantly burdened by a transfer of this action to Utah. First, Critikon asserts that it would be far more convenient for its witnesses, located in Connecticut, New Jersey and Florida to travel to Wilmington than to Salt Lake City. Two of Critikon's potential witnesses, Mr. Herbert Brown, a Critikon executive with overall responsibility for the development of Critikon's Protectiv™ safety catheters, and Mr. Joseph Chang, an employee involved in catheter product testing and development, both work at Critikon's Southington, Connecticut facility. Clearly, travel to Delaware from Connecticut would be less burdensome to these witnesses than travel to Utah. In addition, Critikon's expert, Mr. Vaillancourt lives in Livingston, New Jersey. Delaware is a more convenient forum for him, as well. Also, BDVA has sought the testimony of two Critikon execu-

tives—Mr. Gerald J. Kovalic and Mr. Billie V. Wooley—both of whom work and live near Tampa, Florida. Critikon asserts that travel to Wilmington, via nonstop airline service to Philadelphia, is more convenient for these witnesses because there is no nonstop airline service from Tampa to Salt Lake City.

In addition to the convenience to witnesses, Critikon notes that the prosecution of the Lemieux patent was handled by its corporate parent Johnson & Johnson, which is located in New Brunswick, New Jersey. According to Critikon, the files of the patent attorney and documents relevant to this litigation are located there. Mr. Paul A. Coletti, an attorney in the Johnson & Johnson patent department who was involved in the prosecution of the Lemieux patent is also presently employed at the Johnson & Johnson headquarters in New Jersey.

Finally, Critikon notes that many of the documents it will produce in response to requests from BDVA are located in its facilities in Southington, Connecticut, and New Brunswick, New Jersey. Thus, at least with regard to Critikon's documents, Delaware is as convenient as any other available forum.

It is understandable that BDVA would prefer to transfer this case to Utah, however, the Court finds a transfer to Utah would clearly be unduly burdensome for Critikon and its witnesses.

## B. Interests of Justice

■ In addition to demonstrating that the convenience of the parties and witnesses weighs strongly in favor of transfer, BDVA has the burden of showing that the interests of justice weigh strongly in favor of a transfer. When balancing the interests of justice, the Court examines a number of criteria including the efficient utilization of judicial resources, the cost to the parties of litigating in the Plaintiff's chosen forum as opposed to the proposed transferee forum, access to proof, and the availability of compulsory process. *Schwarzkopf Tech. Corp. v. Ingersoll Cutting Tool Co.,* 820 F.Supp. 150 (D.Del. 1992). As with the balance of convenience of the parties and witnesses, the Court is convinced that the interests of justice are equally served in this case regardless of whether the Court maintains the action in Delaware or transfers the action to Utah.

### 1. The Efficient Utilization of Judicial Resources

The Court finds that judicial economy would be equally served in either of the available district courts. Although Critikon argues that the anticipated August trial date set by this Court is much earlier than any trial date that the parties would obtain in Utah, BDVA has cast some doubt as to whether the August trial date will remain realistic. Beyond that, there is no reason for the Court to assume that the District of Delaware would be more efficient than the District of Utah, or vice-versa, in bringing this action to a timely resolution.

### 2. The Cost to the Parties

Similarly, the costs to the parties and access to proof balance equally if not in favor of maintaining the action in Delaware. BDVA focuses primarily on the travel costs its Utah witnesses will incur. BDVA contends the savings that will result from a trial in Utah with respect to its witnesses outweighs the incremental expense facing Critikon's witnesses in travelling to Utah. However, BDVA's argument overlooks the fact that many of Critikon's potential witnesses, including its expert, are located within a few hours drive of Wilmington. Utah would be as inconvenient for these witnesses as Delaware is for BDVA's witnesses.

### 3. Access to Proof

The Court reaches a similar conclusion with regard to access to proof. BDVA asserts that all of its relevant documents are located in Utah. Critikon asserts that most of its relevant documents are located in Connecticut and New Jersey.

The location of documents, in the context of access to proof, in a document-intensive case such as this can be misleading. No matter where trial is held, BDVA's New York counsel and Critikon's Chicago-based counsel will be required to travel to Utah, Florida, Connecticut, and New Jersey to select and produce the requested discovery.

Regardless of where trial is held, the documents will be copied and mailed to the offices of counsel and subsequently transported to trial.

Notwithstanding access to the documents, BDVA contends that access to proof argues in favor of transfer to Utah because "further savings would result from transfer to Utah as result of BDVA's facilities and equipment in Utah being available for use during trial...." Defendant's Opening Brief, at 14–15. But, as Critikon notes, this action involves alleged infringement of catheters that can be held in one's hand. BDVA has not detailed just what "equipment" relevant to the issues in this case might need to be transported to Delaware, but the Court is convinced that arrangements can be made, if necessary, to ship or in some reasonable way make available the equipment necessary for use at trial.

### 4. Availability of Compulsory Process

The only information before the Court on the need for compulsory process is Critikon's representation that the two third-party witnesses that have been deposed so far are outside the subpoena power of both this Court and the Utah court—one being located in Los Angeles, California and the other in Seattle, Washington. D.I. 64, at ¶ 7. BDVA has named one other non-party witness, Dr. Wallace Ring. Defendant's Opening Brief, at 16 n.*. But, BDVA has not represented to the Court that Dr. Ring would be unwilling to testify at trial voluntarily. Because Dr. Ring is a retired employee of BDVA, see Defendant's Opening Brief, Appendix, Exh. 2, at ¶ 8, the Court must assume that he would be willing to testify absent a subpoena. Accordingly, as with the other factors, the Court finds that the availability of compulsory process does not weigh strongly in favor of a transfer.

### IV. CONCLUSION

The Court concludes that BDVA has failed to demonstrate that the convenience to the parties and witnesses, and the interests of justice, weigh strongly in favor of a transfer of this action to the District of Utah. Ac-

cordingly, BDVA's Motion to Transfer this action to the District of Utah will be denied.

An appropriate Order will be entered.